Mortess W. JOHNSON, Plaintiff,

v.

**DELPHI ENERGY AND ENGINE MANAGEMENT SYSTEMS, INC., a Division of General Motors, Defendant.**

No. 95–CV–6270.

United States District Court,
W.D. New York.

May 21, 1998.

Nira T. Kermisch, Rochester, NY, for Plaintiff.

James C. Holahan, Rochester, NY, for Defendants.

## DECISION and ORDER

SIRAGUSA, District Judge.

This matter is on before the Court on a motion by defendant, DELPHI ENERGY and ENGINE MANAGEMENT SYSTEMS, INC., a Division of General Motors, for an Order of summary judgment [document # 19] pursuant to Federal Rules of Civil Procedure 56 and dismissal of the complaint. For the reasons to be stated, defendant's motion is granted.

## BACKGROUND

Plaintiff Mortess Johnson, an African–American woman qualified for her position as a Senior Clerk, filed a complaint with the Equal Employment Opportunity Commission (EEOC) on April 25, 1995 alleging racial discrimination by defendant. Complaint [document # 1], at ¶ 8; Defendant's Exhibits in Support of Motion, Exhibit B. Her EEOC complaint is part of the record. Defendant's Exhibits in Support of Motion, Exhibit B. In her judicial complaint, filed within ninety days of the "right to sue" letter from the

EEOC, plaintiff alleges she was paid lower wages, was not promoted, and was given lower classifications than non-African-American clerical employees. She generally alleges this conduct began when she was first hired and continued throughout her thirty year tenure. Complaint [document # 1], ¶¶ 11 & 16–20. She also complains that she was not provided with the same equipment and systems as non-African-American employees and did not receive training necessary to work on that equipment. Complaint, ¶ 21. She also alleges that she was approached about retirement whereas none of the non-African-American secretaries was ever so approached. Complaint, ¶ 22. Plaintiff further alleges that she developed tendinitis in both wrists as a result of her work load, but continued to work (she has not made a claim that she was disabled as a result). Complaint, ¶ 25.

Defendant seeks to either have plaintiff's claims dismissed entirely, or at least limited to the period of time encompassed by the applicable statute of limitations for each cause of action under Title VII (42 U.S.C. § 2000e et seq.), 42 U.S.C. § 1981 and New York Executive Law § 296.

## SUMMARY JUDGMENT STANDARD

The law on summary judgment is well settled. Summary Judgement may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3rd Cir.1987)(en banc). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record "if reduced to admissible evidence, would be insufficient to carry the [non-movant's] burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 327 106 S.Ct. 2548, 2555 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. Duplantis v. Shell Offshore, Inc., 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. Knight v. United States Fire Ins. Co., 804 F.2d 9 (2d Cir.1986).

The Court must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City, Department of Corrections, 84 F.3d 614, 619 (2d Cir.1996).

## DISCUSSION

### Statute of Limitations

Plaintiff alleges, in her Memorandum of Law, at p. 4, that the discriminatory practices date from 1967 through to her retirement in 1997. She argues that since there is a continuing violation, the statute of limitations does not apply. Defendant, the moving party for summary judgment, argues that the Court should limit the case to the applicable limitations period for the various causes of action. Defendant's Memorandum of Law, at 4. According to defendant's calculation, this period would commence on August 28, 1 994 for the Title VII causes of action. Id. at 5. Defendant further argues that the claims under New York Executive Law § 296 and 42 U.S.C. § 1981 are limited to the period beginning June 12, 1992. Defendant asks that the Court grant summary judgment dismissing the time barred allega-

tions of plaintiff's claims for intentional race discrimination and retaliations that occurred prior to these starting points. *Id.* at 5.

██ Claims under 42 U.S.C. § 1981 and New York Executive Law § 296 are subject to New York's three year limitations period for personal injury actions. *Tadros v. Coleman,* 898 F.2d 10 (2d Cir.), *cert. denied,* 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990); N.Y. CPLR 214. The statute of limitations begins to run at "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of [his] action." *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Claims under Title VII are governed by, in this case, a 300 day statute of limitations. 42 U.S.C. § 2000e–5(e)(1).

██ Plaintiff asserts that her allegations of a discriminatory policy or mechanism are actionable under the continuing violations doctrine. That doctrine provides that when an employer engages in "a continuous practice and policy of discrimination, 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). "To establish a continuing violation, 'a plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period."'" *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408 (S.D.N.Y.1989) (citations omitted). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994). However, a continuing violation "may not be based on the continuing effects of an earlier discrimination...." *Blesedell,* 708 F.Supp. at 1414 (citations omitted).

Plaintiff argues in her Memorandum of Law, that as long as she can prove continuing violations, the continuing-violation exception applies, citing to *Annis v. County of Westchester,* 136 F.3d 239 (2d Cir.1998). In *Annis,* the Second Circuit quoted from *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997):

> The continuing violation and its continuing-violation exception "extends the limitations period for all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations."

In *Lightfoot,* the plaintiff argued that between 1988 and his termination in 1992, "he was repeatedly 'demoted,' and his pay grade remained frozen." *Lightfoot,* 110 F.3d at 907. The court held, "[a] continuing violation is not established merely because an employee continues to feel the effects of a[n earlier] discriminatory act on the part of the employer. To hold otherwise would render meaningless the time limitations imposed on discrimination actions." *Lightfoot,* 110 F.3d at 907–908.

In the case at bar, plaintiff specifically alleges discrimination based on her delayed promotion in 1978 which occurred eleven years after she was hired as a grade three clerk. Plaintiff's Memorandum of Law, at 1. She cites to 1992 when she was transferred to the Department of Engineering and alleges that of the 13 secretaries there, only two were African–American: plaintiff and Mary Hudson.[1] Plaintiff's Memorandum of Law, at 1. She states that all non-African-American secretaries in the building where she worked were paid more than she and Mary Hudson even though some had less seniority. *Id.* In support of her contentions, plaintiff submitted her affidavit in which she makes conclusory allegations about the non-African-American employees being promoted faster and earning more than she did. Johnson Affidavit, at 1–2. She cites to the specific examples of seven non-African-American women hired from 1967 to 1982, all of whom

---

1. *See Hudson v. Delphi Energy and Engine Mgmt. Systems,* 10 F.Supp.2d 256 (W.D.N.Y.1998) and the Court's decision regarding summary judgment.

she alleges were promoted to grades five or six from three to 13 years after their hiring date. Plaintiff also alleges than after thirty years as defendant's employee, she was "making only $2,750.00[2] a year." Johnson Affidavit, at 4.

Defendant counters plaintiff cannot show that she applied for promotion opportunities and thereafter was denied promotion. Defendant's Memorandum of Law, at 10. Defendant cites to plaintiff's deposition testimony in which she stated

she did not know when the last clerical promotion occurred (Johnson Dep. P. 99), but she was 'quite sure' that she had applied for promotion. (Johnson Dep. P. 100)[S]he did not recall the type of position she applied for or when she applied. *Id.* Furthermore, she acknowledged that she knew nothing about the performance of the white employees who were allegedly promoted. (Johnson Dep. p. 40).

Defendant's Memorandum of Law, at 10.

The Second Circuit has written concerning the refinement of the *McDonnell Douglas* standard:

In recent years, the three-step *McDonnell Douglas* formulation has been clarified. *St. Mary's Honor Center,* 509 U.S. at 510–11, 113 S.Ct. at 2748–50; *Fisher v. Vassar College,* 114 F.3d 1332, 1336 (2d Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). First, the plaintiff must establish a prima facie case of unlawful discrimination by showing that 1) she is a member of a protected class 2) who performed her job satisfactorily (or who was qualified for a new position) 3) who was discharged (or not offered the new position) 4) under circumstances giving rise to an inference of discrimination (or retaliation). *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997); *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

*Stratton v. The Department For The Aging For The City of New York,* 132 F.3d 869, 879 (2d Cir.1997)

■ Plaintiff has shown she is a member of a protected class, that she performed her job satisfactorily, that she was not offered a new position and that others not in the protected class but with similar skills and seniority (sometimes even less) have been promoted. Nevertheless, her allegations that defendant failed to promote her due to her race are merely conclusory, unsupported by specific factual allegations which would lead the Court to conclude there existed a continuing violation from 1967 to 1997. Thus, the claims relating to incidents occurring prior or to the statute of limitations are time barred.

**Equal Pay Claims**

■ In a discrimination case, the court must evaluate the evidence to determine whether the plaintiff has made a prima facie showing of discrimination by a preponderance of the evidence. If so, then the burden of production shifts to defendant to articulate a legitimate, clear, specific and non-discriminatory reason for the adverse employment action taken. If the defendant meets that burden of production, the plaintiff retains the ultimate burden of proof to show that the proffered reason is merely a pretext for racial discrimination. *McDonnell Douglas Corp. v. Green,* 411, U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Viewing the evidence, as the Court must, in the light most favorable to the non-moving party, it would appear that Ms. Johnson, an African–American female, is and has been a satisfactory employee since her employment began in 1967. Plaintiff was promoted within eleven years of her hiring, yet she lists the names of several non-african-american secretarial employees who were all promoted in much shorter time periods, and to more than one grade increase. Plaintiff counters defendant's argument that she failed to show she had applied for a particular position and had not been selected, by stating that her suit is

**2.** This amount is obviously a typographical error and the Court considered it to be $27,500.00 per year instead.

"not a question of job vacancies being promoted[, but] an issue of raises that occur as the job requirement increases and the persons assume more responsibilities. While every white person received promotions, Plaintiff was denied." Plaintiff's Memorandum of Law, at 5. Plaintiff states that although she received recognition awards, those awards were one-time payments which did not affect her base salary or count toward her benefits, pension or social security as "merit increases" would. Johnson Affidavit, at 4. In the exhibits defendant submitted, Exhibit G appears to be a promotion record for a non-African American female employee hired in May of 1983. That employee began as a Clerk II in 1983, was promoted to Clerk III by 1984, Sr. Clerk (grade 4) by 1986 and Secretary (grade 5) by 1990. *See* Tesch Affidavit, at 4 (for an explanation of grade levels). That employee received merit increases in 1989 and 1991 along with recognition awards in 1987, 1988, 1989, 1990 and 1991. Defendant's Exhibits in Support of Motion, Exhibit G.

Defendant counters, in his Memorandum of Law, that plaintiff cannot prove that similarly situated white employees were treated better than she. Defendant's Memorandum of Law, at 8. Defendant claims that since 1985, only one clerical worker in Rochester has been promoted and that promotion occurred only because the employee's boss was promoted and her duties expanded commensurate with his now role. *Id.*, at 9.

Defendant cites to *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.1985), arguing that plaintiff's discrimination claim is precisely the type which the Second Circuit has "confirmed is appropriate for summary dismissal." Defendant's Memorandum of Law, at 16. *Meiri*, though, involved a discharge of an employee during her probationary period for several instances of improper conduct. Absent from that case is the allegation of disparate treatment between different classes of employees.

However, the Court is persuaded to find that in this case, plaintiff has not alleged sufficient facts to prove racial discrimination. Of particular interest is the Second Circuit's decision in *Hudson v. International Business Machines Corp.*, 620 F.2d 351 (2nd Cir. 1980), *cert. den.*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611. In that case, the plaintiff relied on statistics to show racial discrimination, much as plaintiff does in the case at bar. The court wrote:

> Hudson also argues that Judge Carter erroneously failed to consider statistical evidence concerning the racial composition of the work force at the New York Programming Center. The statistics purported to establish that black professional employees were discriminated against in advancing beyond level 52 positions at IBM. Judge Carter held that the statistical data alone would not establish a prima facie case. However, he held that they could be used to bolster a claim of race discrimination, and he admitted them into evidence. We find no error in this determination. In "disparate impact" cases, where plaintiff alleges that an entire class or category of minority workers are adversely affected by an employer's facially neutral policy, and in class actions alleging racially discriminatory employment practices, statistical evidence may establish a prima facie case of discriminatory effect. *Reed v. Arlington Hotel Co., Inc.*, 476 F.2d 721 (8th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *Spurlock v. United Airlines, Inc.*, 475 F.2d 216 (10th Cir. 1972); *Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245 (10th Cir.1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971). This is not, however, a class action or disparate impact case, but rather an individual "disparate treatment" action, where the particular employee must establish that he has been discriminated against because of his race. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-36 & n. 15, 97 S.Ct. 1843, 1854-55 & n. 15, 52 L.Ed.2d 396 (1977). Hudson has failed to establish his case and the statistics standing alone do not create it. *See King v. Yellow Freight System, Inc.*, 523 F.2d 879, 882 (8th Cir.1975).

As in *Hudson*, plaintiff here relies solely on statistics to establish her case. Even if the Court were to credit those statis-

tics as establishing a prima facie case of racial discrimination, the statistics, standing alone, fail to overcome the legitimate, clear, specific and non-discriminatory reason for plaintiff's failure to rise in the company: she never applied for promotions. Unlike the case of Mary Hudson (*see* n. *1*, above), Ms. Johnson does not allege that she worked in a position held by a non-African-American female clerical employee, did the same work as that employee, but was paid less than that employee. Plaintiff has not met her burden of proof and her case must be dismissed.

## CONCLUSION

Defendant's motion for summary judgment [document # 19] is granted and plaintiff's case is dismissed.

IT IS SO ORDERED.