**Anna Marie TAYLOR, Plaintiff-Appellee Cross-Appellant,**

v.

**PHILIPS INDUSTRIES, INC., Defendant-Appellant Cross-Appellee.**

Nos. 78–1927, 78–1928, 78–2217 and 78–2242.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1979.

Decided Feb. 26, 1979.

---

Gerald A. Kamm, South Bend, Ind., for defendant-appellant cross-appellee.

Sharon Ann Wildey, South Bend, Ind., for plaintiff-appellee cross-appellant.

Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and GRADY,[1] District Judge.

PER CURIAM.

Anna Marie Taylor brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq., against Philips Industries, Inc. ("Philips"), alleging that she was unlawfully discriminated against in wages and ultimately discharged because of her sex. The district court found that Ms. Taylor was the victim of unlawful sex-discrimination, and awarded damages in the amount of $78,828.49, plus costs and attorneys' fees. Philips appeals the finding of discrimination; Taylor appeals the amount of damages awarded, the amount allowed for attorneys' fees, the refusal of the trial court to award pre-judgment interest, the denial by the trial court of Taylor's motion to reopen, and the trial court's grant of a stay of injunctive relief pending appeal. For the reasons set forth below, we affirm the district court's finding of sex-discrimination, but reverse and remand on the question of the appropriate remedy.

Anna Taylor was hired by Philips on July 1, 1967. In August of 1967, she was transferred to Philips' Versailes warehouse, and subsequently, in 1968, became warehouse foreman, replacing Otto Kirish, a male. Though she performed substantially the same work that had been done by Kirish, Taylor was paid a lower wage than Kirish had received.

On June 1, 1972, Taylor was transferred to Philips' General Processing warehouse as foreman. Subsequently, on October 4, 1972, she took an extended leave of absence for medical reasons, returning to work on January 2, 1973. On January 15, 1973, Taylor was discharged from employment and replaced by William Tomlin, a male, who received a higher wage than Taylor had received for performing substantially the same jobs. There was no evidence that Tomlin was any more qualified or had any more seniority than Taylor. There was evidence that several male employees, including Tomlin, had taken extended medical leaves without being replaced.

In suits brought under Title VII of the Civil Rights Act of 1964, the plaintiff must first establish a prima facie case of sex-based discrimination. As stated by the Supreme Court in Furnco Construction Corp. v. Waters, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978):

[A] Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act."

\* \* \* \* \* \*

The central focus in a case such as this is always whether the employer is treating "some people less favorably than others because of their . . . sex . . ."

In the present case, Ms. Taylor has met this initial burden.

While employed as Warehouse Foreman at the Versailes Division of Philips Industries, Inc., Ms. Taylor and Otto Kirish performed substantially the same duties. Nevertheless, the district court found that Otto Kirish' salary was over $10,000.00 per

---

1. Judge John F. Grady of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

year for 1968, whereas the plaintiff was paid just over $4,000.00.[2] After being made Warehouse Foreman at Philips' General Processing Division, Taylor received $180.10 per week, considerably less than the amounts paid to her successors at that position, all of whom have been male. We believe that this makes out a *prima facie* case of sex-discrimination under the provisions of 42 U.S.C. Section 2000e–2. It appears quite clear to us that Ms. Taylor was paid a wage lower than that paid to males performing work of substantially the same skill, effort and responsibility. Since Philips offers no justification for this wage differential, it was entirely proper for the district court to conclude that it was motivated by impermissible considerations.

Ms. Taylor also established a *prima facie* case of sex-discrimination concerning her discharge from employment. She presented the testimony of several co-employees to the effect that she performed as foreman, in several ways, better than her successor. There was also testimony to the effect that Taylor did more work than Kirish, whom she succeeded at the Versailes warehouse.

 To meet this *prima facie* case, the employer must articulate some *legitimate*, nondiscriminatory reason for the employee's discharge. *See, Furnco Construction Corp. v. Waters*, 98 S.Ct. at 2950; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972). Philips has suggested that the discharge was a result of Taylor's extended sick leave, and the fact that her successor, Tomlin, had more seniority. In light of the evidence, we cannot say that the district court was obliged to accept these reasons as legitimate. While it is true that Taylor took a somewhat lengthy leave of absence for medical reasons, there was considerable evidence to the effect that several male employees, including William Tomlin, also took extended medical leaves. None of these employees, however, were discharged as a result of their leaves. Furthermore, there was no evidence that William Tomlin had more seniority at Philips Industries, Inc. than Anna Taylor, or that a *bona fide* seniority system with "bumping rights" even existed at Philips Industries, Inc. Finally, we accept the district court's finding that there was no evidence of any business need to replace Ms. Taylor at any time between October 4, 1972, and January 15, 1978. Accordingly, having rejected all legitimate reasons proffered for the discharge of Anna Taylor, we must conclude that it is more likely than not that Philips based its decision on an impermissible consideration, namely Ms. Taylor's sex. *See, Furnco Construction Corp. v. Waters*, 98 S.Ct. at 2950.

 We turn now to the matter of damages. The district court, after finding that Philips had engaged in unlawful discrimination, awarded damages in the amount of $78,828.49. There is no breakdown as to the elements of this amount in the court's final judgment, and we believe there is insufficient evidence in the record, as it now stands, to support this award.[3]

 One of the purposes of Title VII is to make persons whole for injuries suffered on account of unlawful discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Therefore, plaintiff's damages are determined by measuring the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant. *Waters v. Wisconsin Steel Works of International Harvester Co.*, 502 F.2d 1309, 1321 (7th Cir.

2. This apparent difference is diminished to some extent by the fact that Ms. Taylor did not work as foreman for the entire year 1968. For part of that year she had a position of lesser responsibility.

3. We do not mean to suggest that on remand the trial court should arrive at an amount of damages larger, smaller, or equal to the award of $78,828.49. We note only that Ms. Taylor may be entitled to money damages for both wage discrimination and wrongful discharge, and the district court should set forth the amounts attributable to each source. Both parties note that as the order now stands, it is impossible to determine whether the district court awarded damages for the equal pay violation.

1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). Under this formula, before the court may award damages, plaintiff must first establish that she has, in fact, sustained an economic loss from defendant's discrimination.

In the present case, Ms. Taylor did establish economic loss with respect to her receiving lower pay than male employees doing substantially similar work. She did not, however, establish what loss she suffered as a result of her wrongful discharge. The only evidence on this matter presented at trial was Ms. Taylor's testimony that she was unable to find "comparable employment." The record is totally silent as to whether or not Ms. Taylor had received *any* wages from employment after her discharge, whether such employment was comparable or not. It is only with such information that the trial court can carry out its responsibility to reduce the back pay award by the amount of "interim earnings," 42 U.S.C. Section 2000e–5(g).[4] Not until the plaintiff establishes what she contends are her damages does the burden of going forward to rebut the damage claim or to show plaintiff's failure to mitigate damages, fall on defendant. If the plaintiff establishes that she did not work, defendant has the burden of showing that she did not exert reasonable efforts to find work. *See Sprogis v. United Air Lines, Inc.*, 517 F.2d 387, 392 (7th Cir. 1975).[5] But here, the plaintiff did not establish that she did not work. Accordingly, the trial court's award of damages cannot stand. On remand, the court should determine the actual extent of plaintiff's damages. Further, the judgment should indicate what part of the award is attributable to defendant's equal pay violation and what part is attributable to plaintiff's discharge from employment. The court should also specifically state the extent of employee benefits to which Ms. Taylor is entitled.[6]

On cross-appeal, Ms. Taylor challenges the trial court's failure to provide for pre-judgment interest as part of its award. While we would agree that interest on wages due and owing is an available remedy to a plaintiff in a Title VII action, *EEOC v. Local 2P*, 412 F.Supp. 530 (D.Md.1976), the decision whether or not to award such interest is within the discretion of the trial court. *See, e. g., Lodges 743 and 1746, International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975), *cert. denied*, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). We find no abuse of that discretion in the present case.

Taylor also challenges the amount of the district court's allowance for attorneys' fees. The court allowed such fees at a rate of $50.00 per hour. We find no abuse of discretion, particularly in light of testimony that the attorney for Philips had been practicing law in the Northern District of Indiana for over 20 years and had never charged a fee in excess of $50.00 per hour.

Finally, Ms. Taylor challenges the trial court's grant of a stay of injunctive

---

**4.** 42 U.S.C. Section 2000e–5(g) provides, in pertinent part:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . ., or any other equitable relief as the court deems appropriate. . . . Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

**5.** Plaintiff has referred us to cases for the proposition that the defendant has the duty of establishing those factors which would go to mitigate or reduce the amount of damages. While we do not dispute this proposition, we believe it has no application where as in the present case, the plaintiff has not made an initial showing of the amount of her damage.

**6.** The final judgment of the district court stated only that Ms. Taylor should be reinstated with full employee benefits retroactive to January 2, 1973. This statement should be expanded so that the parties are clearly advised of their respective rights and liabilities.

relief pending appeal, and the refusal to allow her to reopen her case to present evidence on profit-sharing and wage discrepancy damages. Because we hold that Taylor was the victim of unlawful discrimination, the relief should cover the period up until the date of her reinstatement, including the time occupied by this appeal. Accordingly, the plaintiff will obtain all relief she would have had if injunctive relief had not been stayed. The district court should, in its discretion, receive any evidence necessary to determine the proper extent of the relief to be given, consistent with this opinion.

In summary, the district court's finding of sex-based discrimination in violation of 42 U.S.C. Section 2000e–2 is affirmed. The decision as to attorneys' fees and prejudgment interest is also affirmed. The case is remanded for a determination of the actual damages suffered by Anna Marie Taylor, including, but not limited to, unequal pay damages, lost earnings, and employee benefits. The damage issue should be heard by the same district judge as before, and the court should hear whatever evidence is necessary to arrive at the proper amount of damages.

Affirmed in part, reversed in part and remanded with directions.