Teri **BIELAWSKI**, Plaintiff,

v.

**AMI, INC.**, Defendant.

No. 1:93CV2022.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 27, 1994.

Alan S. Belkin, Shapiro, Turoff & Belkin, Cleveland, OH, for plaintiff.

Robert T. Rosenfeld, Walter & Haverfield, Michael P. Butler, Office of the Pros. Atty., Cleveland, OH, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Teri Bielawski brings this action against AMI, Inc., her former employer, pursuant to 42 U.S.C. § 2000e ("Title VII"), 29 U.S.C. § 206 ("Equal Pay Act"), Ohio Rev.Code §§ 4112.01 and 4112.99, and Ohio common

law. This Court's jurisdiction is premised on the federal questions raised, and on this Court's supplemental jurisdiction over the state claims. AMI moves for summary judgment, and Bielawski opposes that motion. For the reasons set out below, the motion for summary judgment is granted.

### I.

The undisputed facts, taken in a light most favorable to Bielawski, follow.

AMI, Inc. is a company involved in the management of real estate, particularly property owned by hotels. AMI currently manages seven hotels, one restaurant, one apartment complex, and one strip shopping mall. At the time of the events of which Bielawski complains, AMI was owned by one Robert Soltz. Soltz owned a minority of shares in some of the companies owning properties AMI managed. In addition, in some instances, Soltz was a general partner of the company from which some AMI-managed properties were leased by their owners. For example, Soltz was a general partner of Atwood Associates, which leased property to Atwood Resort. AMI provided management services for Atwood Resort. Soltz was also a general partner of partnerships that owned several properties that AMI also managed. In no case, however, did Soltz individually hold a majority interest in any property AMI managed. Steve Soltz, Robert Soltz's son, is now the owner and president of AMI. AMI files a separate tax return, and owns none of the properties it manages.

The services AMI provides to managed companies include supervision of day-to-day activities, coordination of property insurance and employees' health care insurance, and provision of accounting services. Six of the managed properties have "on-site" controllers, who report directly to Ala-ud-Deen, AMI's vice president for finance. Deen has authority to hire and fire these individuals. In addition, the general managers of the hotel properties each report to Steve Soltz,

who has hiring and firing authority over them.

Bielawski began employment with AMI as an internal auditor on February 27, 1991. Her compensation was $26,000.00. At the time she held this position, she was the only internal auditor AMI employed. In August 1991, Bielawski was promoted to the position of assistant corporate controller at an annual salary of $28,000.00.

From February 8, 1993 to February 12, 1993, one Sib Mallik held the position of Internal Auditor; Mallik was paid more than Bielawski had been at the time she held the position. One Martin Kohler held the position of Internal Auditor from October 21, 1991 through February 11, 1993, and was also paid more than Bielawski had been.

At some time during her employment, Bielawski approached Deen to complain that some men who had fewer job responsibilities than did she were paid more than she was. Deen responded that this was the case because one of the men was a "family man" who needed extra income. Shortly before her termination, Bielawski sent a memo to Deen complaining that she was paid less than were male employees.[1] On April 8, 1993, AMI terminated Bielawski, on the stated ground that she was insubordinate. At no time while Bielawski was employed did AMI employ more than nine people.

### II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . .

---

1. AMI disputes whether this memo can be read as a complaint of gender inequality in pay. However, although AMI represents that it has restated the text of the memo in its brief, neither party includes the text of the memo in the record. Thus, the actual text of the memo is not before this Court. As a result, this Court accepts Bielawski's characterization for purposes of this motion, since she testified in her deposition that the memo complains of sex discrimination and AMI offers no record support for its claim that this characterization is inaccurate.

The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

### III.

Bielawski asserts claims under Title VII, the Equal Pay Act, and the common and statutory law of Ohio. Each of these claims is addressed below.

■ A. Title 42, U.S.C. § 2000e(b) states in pertinent part: "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Both sections 2000e–2 and 2000e–3, under which Bielawski asserts her claims, impose liability only on employers; federal courts have no jurisdiction under those sections to consider discrimination complaints brought against those who are not "employers." Courts are to construe the term "employer" broadly. *Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir.1983).

■ In some circumstances, two entities may be considered as a single employer even where neither, or only one, would ordinarily come within the reach of Title VII. *Id.;* and *E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 571 (6th Cir.1984). There are four criteria for determining whether such a consolidation is proper:

(1) interrelations of operation;

(2) common management;

(3) centralized control of labor relations; [and]

(4) common ownership and financial control.

*Wooster Brush*, 727 F.2d at 572. The "common ownership and financial control" prong is "an inquiry into the legitimacy of the entities. If neither of the entities is a sham then the fourth test is not met." *Id.* It is not necessary that all four criteria be present to justify a finding that two entities are a single employer, provided the other criteria are present to a sufficient degree to establish that the facts and circumstances indicate that

the entities are highly integrated. *Armbruster*, 711 F.2d at 1338.

▮ Here, there is no dispute that AMI employed only nine employees during the relevant time. AMI is an "employer," therefore, only if it can be consolidated with another entity with which it is interrelated. The parties do not dispute that AMI exercises considerable control over the day-to-day operations of the properties it manages, nor do the parties dispute that AMI has authority to hire and fire the general managers of managed hotels, as well as their on-site controllers. In addition, AMI purchases insurance, including health insurance for the employees of managed properties. The first prong of the test is thus satisfied. The parties also agree that AMI has some control over the management personnel of the properties it manages. As noted, AMI can hire and fire the general managers and on-site controllers at many of these properties. To that extent, the managed properties and AMI share common management.

However, Bielawski offers no evidence to the effect that AMI exercises centralized control over the managed properties' labor relations. While AMI has power to terminate certain management personnel, Bielawski offers nothing to suggest that AMI has such control over non-management personnel. Bielawski also offers nothing to indicate that AMI is responsible for negotiating labor agreements with unions or employees. Consequently, there are no disputed facts in the record as to whether AMI exercises centralized control over the managed properties' labor relations.

The parties do not dispute that Soltz owned AMI while serving as a general partner in some of the partnerships owning managed companies. However, it is also undisputed that each entity retained a separate legal identity. Bielawski offers nothing to establish that AMI and any of these partnerships shared common ownership and financial control to such an extent that either entity could be considered a "sham." The

"common ownership and financial control" test is not met.

The facts and circumstances as a whole, then, do not indicate that AMI and any of the managed properties were interrelated to such an extent that it is appropriate to treat them as a single employer within the meaning of § 2000e(b). This Court, therefore, does not have jurisdiction over Bielawski's Title VII claims.

▮ B. Title 29, U.S.C. § 206 provides in pertinent part:

No employer [2] having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by *paying wages* to employees in such establishment at a rate less than the rate at which he *pays wages* to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions ...

29 U.S.C. § 206(d)(1) (emphasis added). To make a *prima facie* showing that an employer has violated the Act, a plaintiff must offer evidence that "the employer 'pays different wages to employees of opposite sexes for equal work on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir.1981), citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 194, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). The act applies not only where the plaintiff is paid less than members of the opposite sex employed at the same time as the plaintiff, but also where the plaintiff is paid less than predecessors. *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 n. 11 (5th Cir.1973).

▮ Here, Bielawski was paid less as an internal auditor than were two men who succeeded, rather than preceded, her in that position. This Court has located no Sixth Circuit authority, and Bielawski has offered

---

**2.** The parties do not dispute that AMI is an "employer" within the reach of the Equal Pay Act pursuant to 29 U.S.C. § 203(d).

none, to the effect that the Equal Pay Act prohibits a wage differential in such a case. This is to be expected, as such an application of the Act would lead to an absurd result. If a plaintiff could make out a *prima facie* case under the Act whenever her employer paid current employees more than *prior* employees of the opposite sex, the Act would effectively deter pay raises after the prior employee left the employer. That is, an employer would risk liability whenever the employer paid a male more than the female he was replacing. Indeed, in this case, Bielawski compares her wages not only to those of the male who replaced her as internal auditor, but also to those of the male who replaced her replacement. Given that it is to be expected that inflationary pressures will cause wages to rise over time, such a reading of the statute is untenable.

This position is bolstered by the fact that § 206(d)(1) is written in the present tense. The plain meaning of the statute is that it applies to cases in which the employer "pays" employees of one gender less than contemporary employees of the opposite sex performing the same job. The fact that the statute has been read to extend liability to employers who pay current employees less than previous ones of the opposite sex does not militate against this construction of the statute. This is so because applying the statute to cases in which the employer pays *less* over time simply does not create the logical difficulty that its application to cases in which the employer pays *more* over time does.

At least one court has held that a plaintiff can make out a *prima facie* case under the Act where she was paid less than was a subsequently hired male. *Taylor v. Philips Industries, Inc.*, 593 F.2d 783 (7th Cir.1979). That court, however, reached that conclusion in a *per curiam* opinion without comment or analysis. In light of the fact that such a holding cannot be reconciled with the plain meaning of the statute, this Court finds the *Taylor* decision to be entirely unpersuasive.

Bielawski does not claim that she was discriminated against in pay in any way other than that she was paid less as an internal auditer than were Mallik and Kohler. Therefore, Bielawski has not presented a *prima facie* showing that AMI violated § 206(d)(1).

C. Bielawski also brings claims under Ohio Rev.Code §§ 4112.01 and 4112.99, as well as Ohio common law prohibiting discharge from employment in violation of public policy. Subject matter jurisdiction in this case was based on the existence of a federal question. This Court had jurisdiction over Bielawski's state law claims only because they were so related to her federal law claims that they were part of the same case or controversy. 28 U.S.C. § 1367(a) (defining the court's "supplemental" jurisdiction). Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the federal claims over which it had original jurisdiction have been dismissed. "[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir.1990) ("Where ... the federal law claims are dismissed before trial on a motion for summary judgment, then the court will ordinarily dismiss the state law claims as well.") Accordingly, this Court, in its discretion, dismisses the supplemental state law claims, without prejudice, for lack of a substantial federal claim.

IV.

This Court lacks subject matter jurisdiction over Bielawski's Title VII claims for discrimination and retaliatory discharge. No material facts are in dispute regarding Bielawski's claim under the Equal Pay Act, and AMI is entitled to judgment as a matter of law on this claim. In addition, this Court dismisses, without prejudice, the supplemental state claims for lack of a substantial federal question. Accordingly, AMI's motion for summary judgment is granted and judgment is entered in AMI's favor.

This order is final and appealable.

IT IS SO ORDERED.